JOSEPH KRAL ET AL., APPELLANTS, V. LINCOLN STEEL WORKS, APPELLEE.

284 N. W. 761

FILED MARCH 17, 1939.   No. 30608.

*Lloyd L. Pospishil,* for appellants.

*Chambers, Holland & Locke, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

MESSMORE, J.

Plaintiffs brought this action for compensation, claiming to be partially dependent on their deceased son, who admittedly lost his life in the course of his employment. A judge of the compensation court granted an award for burial benefits and $4 a week for 325 weeks to plaintiffs as partial dependents. From this award the defendant appealed to the district court for Lancaster county, where the case was tried *de novo.* Plaintiffs' award was vacated, and the claim for compensation dismissed. Plaintiffs appealed to this court.

The sole question involved in this appeal is whether or not the plaintiffs are dependents, within the meaning and contemplation of the workmen's compensation law of this state.

Joseph Kral, 67, and Emma Kral, 64 years of age, were for many years tenant farmers. About 10 years ago they sold their personal effects, realizing therefor the sum of $500, and purchased a small home in Dodge, Nebraska, valued at about $800. There were nine children in their family; two died, four married, and one son, who several years ago was in a Civilian Conservation camp, made a contribution of $25 a month to his parents for more than a year. This son has not contributed to the parents since then and is now married and living in California. Another

son lives at home and works for the state at intervals, receiving about $16 a month in wages, and he contributes $5 monthly to the support of his parents. The parents have no property other than the home, and the father, who is apparently in good health, does odd jobs when able to obtain employment. A few years ago he worked on a government project, but has not subsequently been regularly employed; nor do he and his wife receive old-age assistance. Apparently, the married children have been unable to contribute to the support of their parents.

The son James, 26 years of age, had been more fortunate than other members of the family in procuring employment. He had been employed at different times for four years during the harvest season at Lodge Pole, Nebraska. He had also worked for the Union Pacific railroad at different times, and had been employed by the state. The winter preceding his death he worked for the state, receiving 35 cents an hour, during which time he lived at home. In March, April and May preceding his death, he worked on an extra gang for the railroad, receiving 40 cents an hour. Subsequently he spent about six weeks in the harvest fields, and had worked five weeks for the defendant, when, on September 20, 1937, he met with an accident which caused his death. His wages were about $18.50 a week or about $75 a month. There was due at the time of his death the sum of $14.25, which was paid to his father by the defendant.

Section 48-124, Comp. St. 1929, after providing for total dependency, in subdivision (e) provides in part: "In all other cases, questions of dependency, in whole of (or) in part, *shall be determined in accordance with the fact, as the fact may be at the time of the injury;* * * * if there is no one wholly dependent and more than one person partly dependent, the death benefit shall be divided among them according to the relative extent of their dependency." Subdivision (f) of said section provides in part: "No person shall be considered a dependent, unless he or she be a member of the family of the deceased employee, * * * or

ancestor." Subdivision (g) reads: "Questions as to who constitute dependents and the extent of their dependency shall be determined *as of the date of the accident to the employee,* and the death benefit shall be directly recoverable by and payable to the dependent or dependents entitled thereto." (Italics ours.)

Subdivision 2, of section 48-122, Comp. St. 1929, provides: "If at the time of the accident which resulted in his death the deceased employee leaves no persons wholly dependent, but leaves persons *partially dependent* upon his earnings for support, compensation shall be paid on account of the benefits provided in subdivision 1 of this section for persons wholly dependent, in the proportion that the average amount regularly contributed by the deceased from his wages *for a reasonable time immediately prior to the accident,* to such persons who were partially dependent, bears to the total wages of the deceased during the time." (Italics ours.) The foregoing provisions of the statute apply in the instant case.

A married sister of James lived at Schuyler, Nebraska, about 32 miles from Dodge. She testified, in substance, as follows: Prior to Labor Day James left $11 with her, to be given to his parents, and she delivered this amount to her father. On the Saturday before his death, James gave her $14, to be delivered to his parents. Anton, a brother, testified as to James working in the harvest fields, on the railroad, and for the defendant company. The father testified that James contributed $25 a month before he died, and more than $25 a month during the summer; that he had been employed most of the time between March 1 and September 20, 1937, and did contribute over $20 a month during the months of March, April, May, June, July, August and September, 1937; that he contributed a dollar a day when he was living at home and working for the state, and had received 40 cents an hour while employed by the railroad company. The testimony in reference to employment of James stands uncontradicted.

Having in mind the provision of section 48-124, Comp.

St. 1929, that the question as to who constitute dependents and the extent of their dependency shall be determined as of the date of the accident to the employee, and, further, that the term "dependents," as used in the act, is construed to mean dependents in fact, whether wholly or partially dependent (2 Schneider, Workmen's Compensation Law (2d ed.) 1235, sec. 371), a consideration of the evidence and circumstances in the case and an analysis thereof are necessary in determining the applicability of such evidence and circumstances to the sections of the statute hereinbefore cited.

Where persons of scant means, such as the plaintiffs, actually received contributions for their support from the wages of a son, now deceased, such fact would constitute evidence strongly tending to establish dependency, and the question of dependency or partial dependency must be determined from the facts in each particular case. *Derinza's Case*, 229 Mass. 435, 118 N. E. 942; *McMahon's Case*, 229 Mass. 48, 118 N. E. 189; *Day v. Sioux Falls Fruit Co.*, 43 S. Dak. 65, 177 N. W. 816.

The defendant makes certain deductions from the evidence to defeat plaintiffs' claim for compensation. Anton, the brother, testified, on cross-examination, as to the expenses James would have to bear in living in Lincoln while in the employ of defendant. These expenses were recited in detail and included the purchasing of work clothes, board and lodging, dress clothes, the cost of laundry, and incidentals; and, in addition thereto, defendant, by deduction, concludes that James was contemplating matrimony with a young lady from Schuyler, and that if he spent money for entertainment of various kinds, refreshments or presents, and in addition maintained and operated an automobile, having made at least two trips to and from Schuyler, a distance of 65 miles, the total amount of his expenses would be nearly as much as he received each month while in the employ of the defendant. The alleged matrimonial venture of James and his expenditures for the young lady are not shown with any degree of certainty, and the testi-

mony of Anton as to James' expenses is fallacious, in that there is nothing to show that Anton had the same experience or lived under the same circumstances as James had. James did move to a filling station, presumably to reduce his expense for lodging, when he left a hotel. For 14 days that he had worked for the defendant James received $44.81; for the next 15 days $33.56; and for the four days previous to his death $14.25. Under the circumstances, he could have paid his expenses, and have sufficient money to make the contributions, as testified to, while he was in defendant's employ.

The defendant relies upon a variance in the testimony of the witnesses in the compensation court and their testimony in the district court. James' sister testified in the compensation court that James had worked in the harvest fields about six weeks, and when he returned stated that he had given his parents $25; she knew he gave them this amount because it was left with her, and she delivered it to their parents, and at another time he left $11 with her, in all $36. In the district court she testified that on one occasion James left with her $11 and on another $14, which she delivered to her parents. On rebuttal, she testified that she must have misunderstood counsel; she meant that James gave his parents $25 that he received from his work in the harvest fields, and the only money he left with her was what he had from the defendant, $11 and $14, and that he paid her 70 cents for doing his laundry; that in all he delivered to her $25. The variance in the testimony of Anton in the compensation and district courts is that in the compensation court he did not testify to contributions made, and in the district court testified that he made a contribution of $5 monthly. The variance in the testimony of the father, as given in the compensation and district courts, relates to the amount of contributions. The father testified in the compensation court that James came to Dodge, while he was working for the defendant, two or three times, and in the district court this evidence was denied, the father stating that he received the money from James' sister in

Schuyler. Plaintiffs maintained a small garden and had about a dozen chickens, and the husband worked at odd jobs when he could obtain such employment.

In cases of this character, it is very difficult, due to the change in employment of the son and in his wages, and the lack of opportunity for a common laborer to obtain employment, to properly fix the amounts and time of making contributions to the parents by the son. The plaintiffs are elderly people of foreign extraction, and, due to their environment, lack of advantages, and apparent lack of education, cannot be expected to meet situations with the same degree of exactness as persons of more experience and education would meet them. All of the circumstances must be taken into consideration and allowance made therefor.

While the learned trial judge had the opportunity to observe the witnesses, their general conduct and demeanor while testifying, and to determine the truthfulness or untruthfulness of the stories told by them, and his observations and conclusions as to the credibility of the witnesses are entitled to great consideration, we believe the evidence shows affirmatively that contributions were made by the son James over a reasonable period of time prior to his death; that his parents were partially dependent upon him, and that his contributions were made with reasonable certainty as to amounts and when contributed. This is further borne out by the fact that after James' death his parents were in dire circumstances, and, from necessity, negotiated a loan from their son Frank to pay for the necessaries of life and taxes. The deductions made from the plaintiffs' evidence upon which the defendant solely relies are insufficient to defeat plaintiffs' claim for compensation.

Two Nebraska cases are cited by counsel. One, *Palmer v. Hamer*, 133 Neb. 362, 275 N. W. 322, is cited by defendant on the theory that plaintiffs are not presumed to be dependents, within the meaning of the workmen's compensation law, but must prove the fact of dependency at the time of the death of the deceased son. In that case, an itinerant and intermittent house painter was divorced from

his wife; she was awarded the custody of the children, remarried, and the children were being supported by the stepfather. One daughter testified to contributions made to her by her own father, which testimony the court branded as perjury. Such state of facts did not show dependency on the father, and compensation was denied the plaintiff. In the instant case, contributions were made by the son to his partially dependent parents, and the facts are in no way analogous.

The Nebraska case relied upon by the plaintiffs is *Parson v. Murphy*, 101 Neb. 542, 163 N. W. 847. In that case the son was not living with his mother and was not supporting her at the time of his death. That fact did not bar her right to compensation if she needed support of her son, even though she had $300 or $400 in the bank, drawing interest. Dependency is not based solely on legal obligation to support, and the question is not determined by the fact that the decedent had or had not contributed to the support of the parent before the date of the accident. If the mother is legally entitled to support, and there is probability that she will receive it, she is a dependent. The court said (p. 546) : "It cannot be known, and it will not be presumed, that Nels Parson, if living, would be unmindful of his filial duty, with or without promise, to support his aged and dependent parent."

In the case at bar, the evidence shows that the parents were in need and were partially dependent upon their son James. There was more than the actual fact that they needed the support of James; they actually obtained support from him over a reasonable period of time prior to his death. More than a legal obligation to support existed; more than the need of support existed; actual support was shown. Obviously, the case at bar is a much stronger case than *Parson v. Murphy, supra,* and this court in the latter case held the mother was entitled to compensation, within the meaning of the act. The facts in the instant case harmonize with both decisions and are not at variance therewith.

The workmen's compensation law is highly remedial both in character and purpose. It should be liberally construed in order to accomplish its purpose, and technical refinements of interpretation will not be permitted to defeat it. *Parson v. Murphy, supra; Wilson v. Brown-McDonald Co.,* 134 Neb. 211, 278 N. W. 254.

We believe that the evidence in this case supports the award made by the compensation court in the amount of $4 a week for 325 weeks; that plaintiffs are partial dependents, within the meaning and contemplation of the workmen's compensation law.

The judgment of the district court is reversed, and the cause remanded with directions to the district court to enter an award for plaintiffs in harmony with this opinion.

REVERSED.