MARLINE JOY MEYER, APPELLANT, V. NIELSEN CHEVROLET
COMPANY, APPELLEE.

287 N. W. 849

FILED OCTOBER 20, 1939. No. 30713.

*Joseph L. Jiranek* and *George S. Reeder,* for appellant.

*Frederick M. Deutsch, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER,
MESSMORE and JOHNSEN, JJ.

SIMMONS, C. J.

This is a workmen's compensation case involving the
question of whether or not the plaintiff is entitled to com-
pensation as the dependent child of Melvin E. Meyer.

That Meyer died from injuries arising out of and in
the course of his employment with the defendant as an
automobile salesman is not in dispute here. The matter was
heard before a single judge of the compensation court,
next on rehearing, before the compensation court with three
judges sitting, and on appeal, by the district court. Com-
pensation has been denied the plaintiff by each of said
courts. Plaintiff appeals from that decision.

Plaintiff was born February 3, 1936, the daughter of
Arline Lentz. The mother and Melvin E. Meyer, the de-
ceased, were married April 2, 1936. Prior to the marriage,
plaintiff and her mother were living with Effie M. Lentz,
mother of Arline. After the marriage, Meyer went to live
with his wife, the plaintiff, and the grandmother at the
grandmother's home. On June 6, 1936, Arline brought suit
for divorce, and thereafter Melvin and Arline did not live

together. However, Meyer did continue to board and room at the grandmother's home until about July 1. Arline Meyer in the divorce petition alleged:

"That the defendant, regardless of his marital duties and obligations as a husband, ever since said marriage, without any just cause or provocation whatsoever on the part of the plaintiff, although he was and is of sufficient ability so to do, has grossly, wantonly and cruelly failed, neglected and refused to support and maintain plaintiff and their minor child with necessaries of life; that the defendant, without any just cause or provocation whatever, on the part of the plaintiff, has been guilty of such conduct which in law amounts to extreme cruelty toward the plaintiff and has on several occasions struck and beat plaintiff violently."

The divorce action was not contested. The divorce was granted September 5, 1936. The material part of the decree provided that "the exclusive care, custody, control and education of their minor child, Marline Joy Meyer, be, and she hereby is, awarded to the plaintiff; that the plaintiff have and recover judgment against the defendant, in the sum of $30 for unpaid temporary alimony for the maintenance and support of said minor child and $25 for unpaid suit money and attorney fee; that the defendant pay to the Clerk of the District Court of Platte County, Nebraska, the sum of $15 per month permanent alimony for the maintenance and support of said minor child aforesaid, commencing on the 5th day of September, 1936, and monthly thereafter until further order of this court."

After the divorce, Arline and plaintiff continued to live at the grandmother's home. On March 14, 1937, Arline Meyer remarried and her second husband came to live with her at the grandmother's home. They were living there when the evidence was taken herein. So, at all times, material here, the physical place of abode of the plaintiff and her mother has been at the home of the grandmother.

Prior to the marriage, Melvin contributed nothing to the support of the plaintiff and her mother. After the mar-

riage, and while living at the grandmother's home, he paid grocery bills amounting to about $20 a month, a sum not equivalent to the value of his board and room. Plaintiff was a bottle baby. The testimony is specific that Melvin did not pay for the milk which the plaintiff required. From June to September he contributed nothing to the family in any way. Pursuant to the decree, in September, 1936, he made one payment of $15, and thereafter made no payments or contributions to the support of the plaintiff. Plaintiff's mother was unemployed. The grandmother contributed to their support. After the second marriage, the new husband contributed his limited earnings to their support.

Plaintiff's mother testified that the deceased wanted to have plaintiff supported; that he said "he could afford to pay $15 a month;" that after the payment of the $15 into court, he said "he wasn't earning enough to support himself properly and could not give any to the baby." Court process was not issued to compel payment pursuant to the divorce decree.

The deceased worked for the defendant as a salesman on commission for seventeen weeks preceding his death. He earned $170.68 in commissions during that time. His earnings otherwise are not shown with the exception of the statement of Arline that at the time he was living with the grandmother his earnings approximated $65 a month. After the divorce decree, Melvin went "out west," where it appeared he had some employment. He returned about January 1, 1937.

Plaintiff's mother testified that the deceased asked her to marry him and give the plaintiff his name; that he admitted the paternity of the plaintiff and called her his daughter in conversation with relatives and others. It does not appear that there was a written acknowledgment of the paternity. The grandmother testified that Melvin thought "a lot" of the plaintiff. However, after the divorce was granted, he did not have plaintiff in his custody and never called to see her or gave her anything. While he was absent from Columbus for several months after the di-

vorce, he did not communicate with plaintiff's mother or grandmother, and they knew only approximately when he went away and when he returned.

Claimants have only the rights created by the compensation law. The legislature.has the power to say who shall receive compensation and in what amounts.

Courts do not have the power to extend the benefits of the act beyond the limits fixed by the legislature no matter how unjust the statute may appear to operate in particular cases. The purpose of the act is to compensate an employee for the loss of his earning power, and in case of the death of the employee, to compensate his dependents for the loss of support which they have been receiving and which, but for the injury to the employee, they had a reasonable right to expect would probably continue. In case of death, the payment of compensation is not made for the purpose of enriching the estate of the deceased, nor does it go to his heirs under the laws of descent.

The amount of compensation to be paid bears direct relation to the loss of earnings and to the deprivation of support flowing from wages theretofore received by the employee. In case of the death of an employee, the compensation to be paid to those partially dependent upon his earnings for support is further based upon the proportion that the amount contributed by the deceased to his partial dependents bears to the total wages received by the deceased.

Section 48-124, Comp. St. 1929, provides: "The following persons shall be conclusively presumed to be wholly dependent for support upon a deceased employee: (a). A wife upon a husband with whom she is living at the time of his death; (b). Husband upon a wife with whom he is living at the time of her death; (c). Child or children under the age of eighteen years * * * upon the parent with whom he is or they are living at the time of death of such parent, there being no surviving parent. * * * (d). * * * The terms 'child' and 'children' shall include step-children and adopted children if members of the deceased's household at the time of his death, and shall include posthumous children.

* * * (e). In all other cases, questions of dependency, in whole of (or) in part, shall be determined in accordance with the fact, as the fact may be at the time of the injury; * * * (f). No person shall be considered a dependent, unless he or she be a member of the family of the deceased employee, or bears to him the relation of widow or widower, or lineal descendant, or ancestor, or brother, or sister. (g). Questions as to who constitute dependents and the extent of their dependency shall be determined as of the date of the accident to the employee."

This section of the statute divides dependents covered by the act into two groups: First, those who are conclusively presumed to be dependent; and, second, those who are dependent in fact.

In the first classification, dependency is conclusively presumed as a matter of law; in the second group, dependency must be proved.

Plaintiff, contending that she is conclusively presumed to be a dependent within subdivision (c) relies on the proposition that as a matter of law she was "living" with her father at the time of his death, and cites *Harrison v. Cargill Commission Co.*, 126 Neb. 185, 252 N. W. 899. Plaintiff further contends that the clause "there being no surviving parent" must be construed to mean no surviving parent capable of receiving compensation. The latter proposition we need not decide.

*Harrison v. Cargill Commission Co., supra,* was a case where a woman was confined to a hospital for the insane. Her husband was killed. The widow was held to be "living" with her husband at the time of the accident. The case clearly turned upon the proposition that there had been no change in the legal status of the parties. There was no estrangement or divorce or purpose to separate, or agreement to live apart, or wrong-doing or violation of the marital relations or duties. The wife, had she been restored to mental competency, would have returned to her place of abode with the husband. This court there specifically said (quoting from *Northwestern Iron Co. v. Industrial Commis-*

*sion,* 154 Wis. 97, 142 N. W. 271) : "The 'living together' contemplated by the statute, we think, was intended to cover cases where no break in the marriage relation existed, and therefore physical dwelling together is not necessary, in order to bring the parties within the words 'living together.' There must be a legal separation or an actual separation in the nature of an estrangement, else there is a 'living together' within the meaning of the statute." The distinctions are clear between the *Harrison* case and the instant case. It would do great violence to the English language and to the plain meaning of the statute to hold that the plaintiff, under the facts of this case, was, as a matter of fact or law, living with the deceased at the time of his death.

Plaintiff contends that in any event she is entitled to compensation under subdivision (e) ; that she was by virtue of the divorce decree legally dependent upon the deceased, and that that is sufficient.

It is the loss of the support, the loss of the financial contributions of the employee, which determines the right of the dependent to compensation—not the mere existence of some legal right to support. That the statute means that there must be proof of dependency in fact and not mere legal dependency is established by section 48-122, Comp. St. Supp. 1937, which provides: " (2) If at the time of the accident which resulted in his death the deceased employee leaves no persons wholly dependent, but leaves persons partially dependent upon his earnings for support, compensation shall be paid on account of the benefits provided in subdivision 1 of this section for persons wholly dependent, *in the proportion that the average amount regularly contributed by the deceased from his wages for a reasonable time immediately prior to the accident, to such persons who were partially dependent, bears to the total wages of the deceased during the time."*

If we were to assume in this case that legal dependency were sufficient and if we found that the dependency of the plaintiff was partial, then upon what basis could the com-

pensation be figured? The deceased had contributed nothing to the support of the plaintiff from his wages for a reasonable time immediately prior to the accident. There is no contribution upon which compensation could be figured. That provision establishes the fact that the legislature contemplated that dependency under subdivision (e) meant actual and not a naked legal dependency.

It clearly appears that in the instant case the plaintiff's mother did not rely for the plaintiff's support upon the payment of the amount awarded in the divorce decree; that the deceased had made no contributions to the support of the plaintiff from his earnings for a reasonable time immediately prior to the accident; that he did not intend to make contributions from his earnings to the support of the plaintiff; and that the death of Meyer did not deprive the plaintiff of any support that she had been receiving or had any reasonable expectancy of receiving.

The courts below decided the case upon the authority of *Palmer v. Hamer,* 133 Neb. 362, 275 N. W. 322. Plaintiff vigorously assails the rule there announced. This court there held that legal dependency was insufficient, under our statute, to support a claim for compensation, and where children are living with a stepfather, in order to establish dependency of the children upon the father, that actual support by the father must be shown.

We have reexamined the rule there announced and adhere thereto. It is fully supported by an analysis of the statute and by the authorities. See 71 C. J. 250, 527, 529, 531; *Utah Fuel Co. v. Industrial Commission,* 80 Utah, 301, 15 Pac. (2d) 297, 86 A. L. R. 858; *Weliska's Case,* 125 Me. 147, 131 Atl. 860; *Roberts v. Whaley,* 192 Mich. 133, 158 N. W. 209; *Ocean Accident & Guarantee Corporation v. Industrial Commission,* 32 Ariz. 54, 255 Pac. 598; *Sweet v. Sherwood Ice Co.,* 40 R. I. 203, 100 Atl. 316; *Glaze v. Hart,* 225 Mo. App. 1205, 36 S. W. (2d) 684; *Franklin Fluorspar Co. v. Bell,* 247 Ky. 507, 57 S. W. (2d) 481; *Lloyd-McAlpine Logging Co. v. Industrial Commission,* 188 Wis. 642, 206 N. W. 914; *Ahmed's Case,* 278 Mass. 180, 179 N. E. 684, 79

A. L. R. 669; *Gossen v. Township of Borgholm*, 174 Minn. 227, 218 N. W. 882; *Kral v. Lincoln Steel Works*, 136 Neb. 31, 284 N. W. 761; *Colorado Fuel & Iron Co. v. Industrial Commission*, 90 Colo. 330, 9 Pac. (2d) 285.

Anything to the contrary in the opinion of this court in *Parson v. Murphy*, 101 Neb. 542, 163 N. W. 847, is overruled.

The decree of the district court is

AFFIRMED.