VIRGIL G. PIETERS, APPELLEE, V. DRAKE-WILLIAMS-MOUNT COMPANY ET AL., APPELLANTS.

6 N. W. (2d) 69

FILED OCTOBER 30, 1942. No. 31503.

*Lee & Bremers,* for appellants.

*Fitzgerald & Welch, contra.*

Heard before SIMMONS, C. J., EBERLY, CARTER, MESSMORE and YEAGER, JJ.

SIMMONS, C. J.

This appeal presents the question as to whether or not a son, married and gainfully employed, was a dependent of his father so as to entitle the son to benefits under the workmen's compensation act. The compensation court and the district court held for the plaintiff.

On July 28, 1941, the father was working at a blacksmith's forge in the defendant's shop. The day was hot. Some time that afternoon he quit his work, started home, became ill and died that evening as the result of heat exhaustion.

Prior to March, 1941, the father, a widower 59 years of age, lived in Iowa. He was a blacksmith by trade. He had closed his shop for lack of business, and for some time had worked on a farm for board and room, supplemented by occasional earnings.

The plaintiff lived in Omaha. He testified that he visited his father in Iowa and there the father asked if the plaintiff could find him a job if he came to Omaha, and that the plaintiff told him, "Yes, you can come out and stay with me" and "he said when he found a job he would give me half of what he earned," and that nothing was said as to why he would give him the money and that nothing was said as to board and room, but that "I told him that any time he wanted to come and stay with me he could come and stay."

Subsequent to that conversation the father came to Omaha in late March, 1941, and made his home with the plaintiff. The father was penniless at that time.

The plaintiff is a married man 27 years of age, has one child. For a year and a half, prior to July 28, 1941, he had lived in Omaha where he was gainfully employed throughout that time. His wages ran as low as $12 to $15 a week during the winter months, but more in the summer. For a period of a month or less prior to July 28, 1941, his wages amounted to $24 a week. Before his father came to live with him he lived in a two-room apartment, for which he paid $5 a week, including light, gas and water. He had a cheap automobile that he used to transport himself to work and for an occasional ride in the country. He supported his family from his earnings, supplemented for two or three months by earnings of the wife. The record shows that he had some debts, but the amount or nature is not stated.

The father secured employment as a blacksmith from a Mr. Jensen at $2.50 a day. The work was occasional. In

March he earned and was paid $7.50, April $15.75, May $52.50, June $40.00, July $58.50; a total of $174.25. He quit working for Mr. Jensen at noon on Thursday, July 24, 1941, and that afternoon began working for the defendant at 60 cents an hour for a 40-hour week. He was paid $2.20 for his Thursday's work by the defendant. He worked for the defendant Friday and a part of Monday, July 28, for which the plaintiff was paid, after his father's death, the sum of $8.02.

The record is not clear as to the payments made by the father to the plaintiff. No record was kept by the plaintiff of payments made. He testified that the father gave him half of his earnings. He also testified that "most generally * * * he gave me $6 or $6.50" a week and "when he got to making $12 or $13 a week then he gave me $6, or half of whatever he made." However, it was stipulated that the father was paid $18.75 on July 26, 1941, by Jensen. He was also paid $2.20 by the defendant, or a total of $20.95. From these payments defendant testified that "he gave me $6."

Assuming the correctness of plaintiff's contention that he received one-half of his father's wages, he was given an average of 72 cents a day during the time his father worked for Mr. Jensen and would have been entitled to receive an average of $1.28 a day from the wages the father received from the defendant. The testimony of the plaintiff also is that, in addition to the amounts of money received, the father gave presents of clothing to the child and quite often bought articles of food that the father liked which went upon the family table. For this the father received his meals, a place to sleep, and the accommodations of a home. The plaintiff testifies that it cost him $1.50 a week to furnish this to the father, i. e., his rent was increased 50 cents a week to cover additional water and gas, and that the increased grocery cost was $1 a week.

The plaintiff testified that prior to his father's coming to live with him, because of his limited income, plaintiff and his wife seldom, if ever, went to shows, dances or enter-

tained in their home, and that their clothing was restricted in amount and their food simple; and that after the father came they set a better table, were able to go to shows and dances, to entertain occasionally, and to catch up on his debts, and that the money of the father went to help pay for these items.

Over objection, plaintiff testified that he was "depending upon this money" from his father for the support and keep of his family and himself. After the father's death the plaintiff moved from the apartment where he had been living into a small three-room house for which he paid $14 a month. The record does not show whether gas, light or water were furnished at his new location. The evidence supports a conclusion that the plaintiff's living standards were reduced somewhat after the father's death.

Upon this record a judge of the compensation court and the district court held that the father's death came from causes which arose out of and in the course of his employment, that the deceased contributed 50 per cent. of his wages to the plaintiff for the support and maintenance of the plaintiff and his family, that the plaintiff was 50 per cent. partially dependent upon those wages and awarded $7.50 a week compensation for a period of 325 weeks, together with burial benefits and medical services. The district court also allowed plaintiff an attorney's fee of $125.

Section 48-124 (e), Comp. St. 1929, applicable here, provides that the question of dependency, "in whole or in part, shall be determined in accordance with the fact, as the fact may be at the time of the injury * * * ." This section of the statute was construed in *Kral v. Lincoln Steel Works,* 136 Neb. 31, 284 N. W. 761, and in *Meyer v. Nielsen Chevrolet Co.,* 137 Neb. 6, 287 N. W. 849. Pursuant to the provisions of the statute, we must determine the question of dependency here presented from the facts of this case. We are not presented with a question of weighing conflicting evidence, but rather with determining the ultimate fact from the testimony given by the plaintiff, who gave the entire testimony on that question.

Plaintiff relies upon the rule stated in *Powers v. Hotel Bond Co.*, 89 Conn. 143, 93 Atl. 245, and other cases, that the test of partial dependency is whether the contributions were relied upon by the dependent for his or her means of living, judging this by the class and position in life of the claimed dependent, and argues that plaintiff testified that he so relied, and that the facts support him by showing that reliance.

Plaintiff argues, in substance, that the facts are that the father came into his home and made the contributions in order that he, the father, might aid the son in his straitened circumstances and help the son maintain a better standard of living, and for that purpose the father agreed to contribute 50 per cent. of his wages "for the upkeep of the plaintiff's family." We cannot so read the record. We have here a son, gainfully employed, and supporting himself, his wife and child on his income. The support was meager, but plaintiff was maintaining his family in the place in life that he had carved out for himself. While the plaintiff may have desired to improve his status, and was actually doing so, he did not seek nor receive the aid of his father to that end. The father was indigent and in need. The father sought work in Omaha, clearly for the purpose of improving his own status in life. The record is silent of any intent or purpose of the father to aid the son. On the contrary, the plaintiff told his father "that any time he wanted to come and stay with me" he could do so. This was obviously an offer of aid to the father, then in need. The father said that if he came and found a job he would give the plaintiff one-half of what he earned. For what purpose? Obviously not to aid the son, but to relieve the son in part at least of the increased burden which the son proposed to assume. This condition and these arrangements remained the same from the beginning until the father's death.

Plaintiff has not established facts which call for the application of the rule upon which he relies. Before that test of dependency, or any other, may be applied, it is necessary that the plaintiff establish that the partial contributions

were made by the employee for the purpose of support of the claimed dependent. It is not money contributed, but money contributed for the partial support of the claimant that must be the basis of any claim of partial dependency. Dependency in fact is not created by contributions made for purposes other than partial support of the alleged dependent. 2 Schneider, Workmen's Compensation (2d ed.) 1235. Here the record sustains only the conclusion that the plaintiff assumed the burden of caring for his father, that while unemployed the burden of caring for his father was entirely upon the plaintiff, and that when the father was employed the burden was in part, at least, carried by the father. The record does not support a finding that the father at any time undertook to or did contribute to the plaintiff for the purpose of aiding in the support of the son or his family.

The record establishes that there was an improvement in the plaintiff's financial condition as a result of the money given him by his father. The plaintiff figures the amount received as about $6 a week and the increased expense at about $1.50 a week. The father, however, was not paying for groceries, nor water and gas, as such. He was receiving his meals, a place to sleep and the comforts of a home. His contributions did not exceed the reasonable value of that which he received. The fact that during this period, and in particular the last weeks, there was a small profit to the plaintiff in the difference between the cost of commodities purchased and the contributions made does not in and of itself establish dependency under the act. The test is not solely the financial injury which the alleged dependent has suffered. 71 C. J. 530.

To hold the plaintiff to be a dependent of his father, under the circumstances here shown, would be contrary to the plain meaning of the word. Such a result cannot be deemed to have been intended by the legislature.

The judgment of the district court is reversed and the cause dismissed.

REVERSED AND DISMISSED.