FRANK R. FREBURG ET AL., APPELLANTS, V. CENTRAL
NEBRASKA PUBLIC POWER AND IRRIGATION DISTRICT,
APPELLEE.

8 N. W. (2d) 209

FILED FEBRUARY 26, 1943.   No. 31538.

*Anderson, Storms & Anderson,* for appellants.

*Stiner, Boslaugh & Stiner, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-
MORE, YEAGER, CHAPPELL and WENKE, JJ.

SIMMONS, C. J.

This is a workmen's compensation case, brought by the
parents of a deceased son, and presents the question as to
whether or not the parents were partial dependents of the
son so as to entitle them to compensation under the provi-
sions of section 48-122 (2), Comp. St. Supp. 1941, and sec-
tion 48-124, Comp. St. 1929.   The compensation court and
the district court held against the plaintiffs.   They appeal.
We affirm the judgment of the trial court.

It is stipulated that the son Chester was unmarried, 25
years of age, was an employee of the defendant at the time
of his death on April 18, 1941, and that death resulted
from an accident within the scope of his employment.   That
he had been employed by defendant from March 22 to May
12, and September 8 to November 21, 1939; and again from
March 11 to December 27, 1940; and from January 7 to
February 18, and March 20 to April 18, 1941.   His total
wages in 1939 were $256.18, in 1940, $861.31, and $253.33
in 1941.

For many years prior to 1939 the plaintiffs lived with
their four children, two sons and two daughters, on a farm

in Phelps county. The deceased son Chester graduated from high school in 1933. Prior and subsequent to that time he assisted the parents on the farm. Prior to 1939 he worked at various places and contributed liberally of his earnings to his parents. His earnings went for the support and maintenance of the family.

In August of 1939 crops were poor, the father was in debt to the bank, to machinery vendors, on unsecured debts and to the Federal Land Bank on land in Morrill county. He had personal property consisting of farm machinery, live stock, and an automobile. The parents determined to go to California where he, the mother, and the grown daughters thought they could secure employment. They gave a bill of sale of their personal property to the son Chester. He was to try to pay the debts and to send them money for their support if required. Chester owned an automobile at the time. The father's car was left with Chester and Chester's car taken to California. Titles were transferred between them then or shortly thereafter.

The parents, the two daughters and the younger son went to California in August, 1939, and thereafter remained until the death of Chester on April 18, 1941. During that time the father and mother earned $1,100 and the daughters earned $1,700. The record is not clear as to the amount the daughters contributed to the family expenses, but it is established that the family, with one exception to be noted later, were self-supporting during that time, and had funds with which to return to Nebraska at the time of Chester's death.

After the parents went to California, Chester operated the farm, treated the personal property as his own, selling some of it, and borrowing money, giving the property as security. Although the father testified that the transfer of the title of the property was "temporary," the evidence shows that the parents received the property remaining at Chester's death under the inheritance laws of Nebraska.

After the parents removed to California, Chester paid some $1,300 of his father's old obligations. These included

small doctor bills, personal items, personal taxes, deferred payments due on automobiles and machinery, a debt due the bank secured by chattel mortgage on the personal property transferred to him, payments due the Federal Land Bank on the Morrill county land, and a premium on a sister's insurance.

It is not shown that Chester ever accounted to the parents for any moneys received from the sale of the personal property or for the farm operations, nor that he sought an accounting of the amounts which he paid out. All funds were kept in his personal checking account at the bank. The testimony indicates that this was considered to be a "joint account" with the father, but it is established that the father never drew checks upon it or made deposits in it.

The parents testified that Chester gave them $50 when they left for California; however, this money appears to have been from a wheat loan which the parents secured at that time. The parents requested Chester to send, and he did send them on January 17, 1940, a check for $25 which was used for living expenses. This money he borrowed from the banker. He had been employed by the defendant at $75 a month, but was discharged November 21, 1939, and not again reemployed until March 11, 1940. Chester was not employed by defendant when this money was sent to the plaintiffs. This money is not shown to have come "from his wages." Comp. St. Supp. 1941, sec. 48-122 (2). There is evidence that at some time he also sent the father a five dollar bill. No other contributions are shown to have been made by the son to the parents while they were in California.

It is clear that total dependency is not shown. Were the plaintiffs "partially dependent" under the act?

Section 48-122 (2), *supra*, provides: "If at the time of the accident which resulted in his death the deceased employee leaves no persons wholly dependent, but leaves persons partially dependent upon his earnings for support, compensation shall be paid on account of the benefits provided in Subdivision 1 of this section for persons wholly

dependent, in the proportion that the average amount *regularly contributed* by the deceased *from his wages* for a *reasonable time immediately prior to the accident,* to such persons who were partially. dependent, bears to the total wages of the deceased during the time." (Emphasis supplied.)

Section 48-124, *supra,* provides (e) "In all other cases, questions of dependency, in whole of (or) in part, shall be determined in accordance with the fact, as the fact may be at the time of the injury; etc.," and (g) "Questions as to who constitute dependents and the extent of their dependency shall be determined as of the date of the accident to the employee." It appears clearly from this record that the deceased made no contributions to the plaintiffs "from his wages," regularly or otherwise, "for a reasonable time immediately prior to the accident."

But plaintiffs contend (1) that the promise to send them money if required, and (2) that the payments made on the parents' indebtedness were contributions, and bring them within the act.

The statute was considered in *Meyer v. Nielsen Chevrolet Co.,* 137 Neb. 6, 287 N. W. 849, wherein we held: "It is the loss of the support, the loss of the financial contributions of the employee, which determines the right of the dependent to compensation—not the mere existence of some legal right to support."

The payments made on the parents' indebtedness do not meet the requirement of the statute. The evidence does not show from what source the funds came that made the payments, although it is apparent that some came from the sale of personal property, some from farm revenue, some from moneys borrowed. Even if we were to assume that the payments on plaintiffs' debts came from wages earned by Chester in working for the defendant, the requirements of the statute would not be satisfied. The contributions from Chester's wages, if any there were, went not to the support of the plaintiffs, but to the retirement of plaintiffs' debts all incurred more than 20 months before Chester's

death. We have held: "It is not money contributed, but money contributed for the partial support of the claimant that must be the basis of any claim of partial dependency. Dependency in fact is not created by contributions made for purposes other than partial support of the alleged dependent." *Pieters v. Drake-Williams-Mount Co.*, ante, p. 315, 6 N. W. (2d) 69.

The judgment of the district court is

AFFIRMED.