## ESCHBACH v. CONTRACTORS, PACIFIC NAVAL AIR BASES.

## ESCHBACH v. BROWN.
### Nos. 10033, 10034.

United States Court of Appeals
Seventh Circuit.
May 11, 1950.

---

B. S. Quigley, William P. Nolan, Otto Kerner, Jr., U. S. Atty., John Peter Lulinski, Benjamin D. Caruso, Asst. U. S. Attys., Chicago, Ill., Ward E. Boote, Chief Counsel, Bureau of Employees' Compensation, Federal Security Agency, Washington, D. C., Herbert P. Miller, Assistant Chief Counsel, Washington, D. C., of counsel, for appellant.

Leslie G. Agasim, Edward Levine, Chicago, Ill., Marcy K. Brown, Jr., Kansas City, Mo., Wayne & Levine, Chicago, Ill., for appellee.

Before FINNEGAN, LINDLEY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This is an appeal from a decree of the District Court enjoining the defendant, the Deputy Commissioner, from enforcing his order rejecting plaintiff's claim for compensation under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., as extended by the Defense Base Compensation Act of 1941, as amended, 42 U.S.C.A. § 1651 et seq. The claimant's employer was Contractors, Pacific Naval Air Bases and its insurance carrier was Liberty Mutual Insurance Company. In the first hearing before the Deputy Commissioner the employer and its insurance carrier contended that: (1) The claimant did not give notice of the injury within thirty days, as required by the Act, 33 U.S.C.A. § 912. (2) The claimant did not file his claim for the injury within the one year period allowed by the Act. 33 U.S.C.A. § 913. (3) The claimant failed to show that his injury, tuberculosis, re-

sulted from or was caused by his employment.

The Deputy Commissioner found against the plaintiff on each of these issues and entered an order denying plaintiff compensation. The plaintiff then filed an action in the District Court to enjoin the Deputy Commissioner from carrying said order into effect and asking that the court set aside said order and require the Deputy Commissioner to "enter an order awarding compensation to the plaintiff pursuant to the provisions and in the manner and amount set forth" in the Act.

The District Court in its decree found and held that the Deputy Commissioner's findings as to giving of notice and as to the time for filing a claim were erroneous as a matter of law, and that since the Deputy Commissioner, "erroneously concluded as a matter of law that he had no jurisdiction to hear the claim, his remaining findings of fact (that there was no causal connection between the employment and the injury) constitute mere surplusage." The court, therefore, enjoined the Deputy Commissioner from enforcing plaintiff's claim, and remanded the cause to the Deputy Commissioner with directions to make conclusions of law in accordance with the court's memorandum, and to conduct a full hearing as to the fact of a causal connection between claimant's disease and his employment.

The plaintiff, Eschbach, was employed by the Contractors, Pacific Naval Air Bases, from September 5, 1942, until January 3, 1943, on which latter date it was discovered that he had advanced tuberculosis. At that time he gave no notice to the Deputy Commissioner, nor to his employer, that his then condition was related to his employment, or that he claimed any such relation. The plaintiff gave no notice of any such claimed causal connection until four years later and filed no claim for compensation until January 12, 1948, more than five years after he discovered his condition. The employer and the insurance carrier contested the claim for compensation. A hearing was held thereon before the Deputy Commissioner and upon the evidence adduced at that

hearing the Deputy Commissioner found that claimant's employment was covered by the Act; that on January 3, 1943, while under the care of a private physician for an anal fistula he was found to be suffering from advanced pulmonary tuberculosis, which condition constituted the basis of his asserted claim; that no notice was given to the employer by or on behalf of the claimant within thirty days; that the employer had knowledge that the employee was suffering from pulmonary tuberculosis within thirty days, but that it had no knowledge or intimation that the disease arose out of the employment, or was thought to have done so until more than four years thereafter; that in the absence of such knowledge the employer was not required to establish prejudice from want of notice; and that the defense of want of notice was raised at the first hearing on said claim at which all parties were represented.

The Deputy Commissioner further found that the claimant was totally disabled by said tuberculosis from January 3, 1943, to the time of the hearing; that no compensation was ever paid to him; that no claim for compensation was filed until January 12, 1948; that the time for filing said claim was not extended under the terms of § 30 of said Act, and that the defense that the claim was barred because it was not timely filed was raised by the employer and its insurance carrier at the first hearing on the claim, at which all parties were represented.

The Deputy Commissioner, as his final finding, found that claimant's illness neither arose out of, resulted from, nor was aggravated by, his employment.

In the hearing before the Deputy Commissioner, the following facts were related by Carl Eschbach, the claimant. Prior to his employment by the Contractors, Pacific Naval Air Bases, he had lived in Brunswick, Missouri; where, for ten years prior to this employment, he had been engaged in doing odd jobs of painting and carpentering work. At Kansas City, Missouri, he entered into a contract of employment with the Contractors, which was reduced to writing at Alameda, California, on Sep-

tember 5, 1942. Eschbach was examined by a Dr. Poorman in Kansas City, who found no symptoms of tuberculosis but made no X-ray examination of his lungs. Claimant testified he had never had any suspicion that he might have lung trouble. While making the crossing to Hawaii, claimant was first bothered with an anal fistula. He consulted the ship's doctor when they were five or six days out of San Francisco, but there were no facilities aboard ship for treating the fistula. Upon arrival in Honolulu, he immediately went to see a Dr. Reichert, who lanced the fistula, asked him if he had ever had tuberculosis, and advised him that anal fistulas sometimes occur with tuberculosis. Dr. Reichert made this suggestion to Eschbach concerning the possible association of the fistula with a tubercular condition before he commenced working.

Eschbach was given another physical examination after arriving in Honolulu and was sent to Barber's Point, about twenty miles from Honolulu, where he worked from September, 1942, until January, 1943, laying concrete forms. Claimant testified that he went back to Dr. Reichert several times, and Dr. Reichert told him that he did not want to operate and indicated that the fistula would heal itself if there was no tuberculosis present. In the early part of January, 1943, claimant insisted on an operation and told Reichert that during the last month he had started losing his appetite and having night sweats, which he thought was from tropical fever.

The morning he was to be operated, January 3, 1943, he was running a temperature and on that account chest X-rays were taken. He was then informed that he had tuberculosis. Claimant's employer had nothing to do with procuring a doctor or with his treatment up to that time. After he had been in St. Francis Hospital about ten days, claimant went out to Barber's Point to see about returning to work. Coughlin, the personnel man of his employer, then arranged to have him transferred to Leahi Hospital, where his treatment would be free, and thereafter, the hospital bill at St. Francis was paid by the Contractors. They also arranged for and did pay his transportation costs back to the States, and from the port of debarkation to Kansas City. A few days after his arrival in Kansas City, Eschbach entered the Veterans' Hospital at Excelsior Springs, Missouri, where he learned that he then had a "far advanced case" of tuberculosis.

Eschbach made no report of his condition to the employer or to the insurance company until March 18, 1947, when he wrote to his former employer (Contractors) regarding a possible claim against them and their insurance carrier. Claimant testified that he had not stated to anyone either in Honolulu or Alameda that he thought his tuberculosis was the result of his employment, nor did he state that the fistula was related to any work done by him or to any accident sustained by him while he was employed by the Contractors.

Dr. Louis Levin, who was Chief of the Medical Service of the Veterans' Administration Hospital at Excelsior Springs, Missouri, where plaintiff had been a patient from March 23, 1943, also testified at the hearing before the Deputy Commissioner, both from his personal knowledge of the case and from the complete official records of the hospital, which had been kept in accordance with government regulations.

Dr. Levin's testimony was that the admission X-rays at the hospital showed a far advanced bilateral pulmonary disease with cavitation on the left side. He described the treatment which the hospital had given the plaintiff and stated that: "It would be impossible to say how long the tubercular condition had existed to produce the cavitation shown by the X-ray on plaintiff's admission to the hospital." He stated that the X-ray examination of plaintiff's lungs in Honolulu showed practically the same condition then as the X-rays taken on his admission to the Veterans' Hospital. Dr. Levin stated that the absence of symptoms, such as night sweats, coughing, and loss of appetite prior to December, 1942, would, as a rule, mean that the patient did not have such extensive tuberculosis at that time,

although a patient can have extensive tuberculosis without such symptoms.

Dr. Levin further testified that there was no way of determining whether plaintiff's condition had existed for a month, six months, a year or two years; that it might have been developing for a matter of two years and still not have given any symptoms of the disease; that twenty per cent of the people who have tuberculosis develop anal fistulas such as the plaintiff developed on the boat on his way to Honolulu; that in such cases tuberculosis precedes the fistula.

■ In the hearing before the Deputy Commissioner the burden was on the plaintiff to prove the facts necessary to sustain his claim other than those facts which § 20 of the Act, 33 US.C.A. § 920, provides shall be presumed unless there is substantail evidence to the contrary. The fact as to the causal connection between the employment and the injury is not one which is to be so presumed. The burden was, therefore, on the plaintiff to prove such fact.

Section 19 of the Act, 33 U.S.C.A. § 919, provides that as to claims filed under the Act, "the deputy commissioner shall have full power and authority to hear and determine all questions in respect of such claim."

Section 21, 33 U.S.C.A. § 921, provides that the order of the Deputy Commissioner may be set aside by the Federal District Court, only if the award or order is "not in accordance with law."

■ The cases uniformly hold, however, that the findings of the Deputy Commissioner as to the facts, other than jurisdictional facts, are conclusive if there is substantial evidence to sustain such findings.

In Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598, the Supreme Court held that determination of the jurisdictional facts as to the locality of the injury and as to the employment were not final and binding on a reviewing court. This Court in South Chicago Coal and Dock Co. v. Bassett, 7 Cir., 104 F.2d 522, said

that the fact that the Supreme Court in the Crowell case named the two facts necessary to jurisdiction, impliedly excludes other facts from being considered as jurisdictional and subject to review by a court. Accordingly this Court held that the fact as to whether the claimant was a member of the "crew" and therefore excluded from coverage by § 3 of the Act was not a jurisdictional fact which a district court might review.

In affirming this decision the Supreme Court, 309 U.S. 251, 257, 60 S.Ct. 544, 548, 84 L.Ed. 732, said: "So far as the decision that this employee, who was at work on this vessel in navigable waters when he sustained his injuries, was or was not 'a member of a crew' turns on questions of fact, the authority to determine such questions has been confided by Congress to the deputy commissioner. Hence the Court of Appeals correctly ruled that his finding, if there was evidence to support it, was conclusive and that it was the duty of the District Court to ascertain whether it was so supported and, if so, to give it effect without attempting a retrial."

The plaintiff's brief seems to contend that the burden was upon the employer and the insurance carrier to show that the plaintiff's condition did not arise from his employment, or was not aggravated by his employment, and that upon the question of the employer's knowledge, there should have been positive evidence from the employer that it did not know claimant's condition arose out of, or was claimed to have been caused by, his employment. The plaintiff states that: "They are legally charged with what they should know or should suspicion from the facts, and the Commissioner cannot make an inference totally unsupported by any positive evidence that the employer did not know these facts."

■ The District Court must have accepted this contention by the plaintiff. It must be borne in mind, however, that the District Court was only sitting as a court of review as to the proceedings before the Commissioner and was not permitted to re-try the case or to draw an inference

different from that drawn by the Deputy Commissioner, if the inference drawn by the Deputy Commissioner had any basis in the evidence. The record of the entire proceeding before the Deputy Commissioner was before the District Court and its function was to examine that evidence to see if the inferences and findings of the Deputy Commissioner were supported by substantial evidence. On questions on which the claimant had the burden of proof, a finding by the Deputy Commissioner against the claimant was correct and according to the evidence, if there was no evidence, or insufficient evidence on such question.

In Cardillo v. Liberty Mutual Insurance Co., 330 U.S. 469, 477, 67 S.Ct. 801, 806, 91 L.Ed. 1028, the Supreme Court said: "In determining whether a particular injury arose out of and in the course of employment, the Deputy Commissioner must necessarily draw an inference from what he has found to be the basic facts. The propriety of that inference, of course, is vital to the validity of the order subsequently entered. But the scope of judicial review of that inference is sharply limited by the foregoing statutory provisions. (§ 19(a) of the Act.) If supported by evidence and not inconsistent with the law, the Deputy Commissioner's inference that an injury did or did not arise out of and in the course of employment is conclusive. No reviewing court can then set aside that inference because the opposite one is thought to be more reasonable; nor can the opposite inference be substituted by the court because of a belief that the one chosen by the Deputy Commissioner is factually questionable (Citing cases.)"

■ A review of the evidence in this case convinces us that the finding of the Deputy Commissioner that the plaintiff's condition was neither caused nor aggravated by his employment was supported by the evidence.

■ The District Court assumed that since the Deputy Commissioner found that the claim was not filed within the statutory time, the finding of the Deputy Commissioner that the plaintiff's condition was neither caused nor aggravated by his employment, was surplusage and that the cause should, therefore, be remanded for a "full hearing" on that question. The Deputy Commissioner's finding that the claim was not timely filed was one reason for denying compensation. Even if the District Court was correct in holding that that finding of the Deputy Commissioner was erroneous, the finding of the Deputy Commissioner that there was no causal connection between plaintiff's disease and his employment was supported by the evidence and should have been sustained by the District Court. The hearing before the Deputy Commissioner, as shown by the record which the District Court had before it, was a full and complete hearing. The District Court sitting in review on the order of the Deputy Commissioner should have sustained that order if there was any valid finding of the Deputy Commissioner which justified the denial of compensation. The finding that the plaintiff's disease was neither caused nor aggravated by his employment was such a finding.

Since this appeal was taken the plaintiff died and the administrator of his estate had been substituted as plaintiff-appellee.

The judgment of the District Court is reversed and the cause is remanded with instructions to the District Court to dismiss the complaint.