POLLOCK–STOCKTON SHIPBUILDING CO. et al. v. BROWN et al.

No. 10114.

United States Court of Appeals Seventh Circuit.

Heard Oct. 19, 1950.

Decided Nov. 8, 1950.

Otto Kerner, Jr., U. S. Atty., Melvin L. Klafter, Asst. U. S. Atty., John Peter Lulinski, Chicago, Ill. (Ward E. Boote, Chief Counsel Bureau of Employees' Compensation, Herbert P. Miller, Assistant Chief Counsel, Washington, D. C., of counsel), for appellants.

William I. Caldwell, Oswell G. Treadway, Chicago, Ill. (Hinshaw & Culbertson, Chicago, Ill., of counsel), for appellees.

Before MAJOR, Chief Judge, and FINNEGAN and LINDLEY, Circuit Judges.

MAJOR, Chief Judge.

On December 23, 1946, one Melvin L. Brehm (sometimes referred to as the employee or the deceased) fell from the top of a drydock while employed by the libelant, Pollock-Stockton Shipbuilding Company (sometimes referred to as the employer), suffered a fracture of the skull and other injuries which caused his immediate death. His mother, Mrs. John (Emma) Brehm (sometimes referred to as claimant), filed claim for compensation under the terms of the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424, 33 U.S.C.A. § 901 et seq. The employer and its insurer, Industrial Indemnity Exchange, controverted the claim for compensation and a hearing was held before Leonard C. Brown, a Deputy Commissioner, on June 22, 1948. On July 13, 1948, the Deputy Commissioner filed a Compensation Order awarding a death benefit to the claimant. The Deputy Commissioner as a basis for the order among other things stated: "That the employee was unmarried but left surviving him, his mother, Mrs. Emma Brehm, toward whose maintenance he had contributed in the neighborhood of $300.00 during the year preceding his death, and who was dependent upon him to that extent for the necessities and comforts of life."

The employer and its insurer filed a petition for judicial review of the Compensation Order, pursuant to Sec. 21 (b) of the Longshoremen's Act, 33 U.S.C.A. § 921 (b), alleging in substance that said order was not in accordance with law because the finding of dependency was not supported by evidence. Attached to the petition for review and made a part thereof was the Compensation Order complained of and a copy of the record made at the hearing before the Deputy Commissioner.

The District Court at a hearing reviewed the record made before the Deputy Commissioner and among other things found: "That Mrs. John (Emma) Brehm, mother of said Melvin L. Brehm, Deceased, was not dependent in whole or in part upon the earnings of said Deceased at the time of his death and that the finding of fact of said Deputy Commissioner, Leonard C.

Brown, regarding such dependency is not supported by any evidence of the record made before said Deputy Commissioner." Thereupon the court, by its order of November 15, 1949, set aside the Compensation Order and permanently enjoined its enforcement. It is from such order that the appeal comes to this court.

Thus the crucial issue is whether the finding of dependency made by the Deputy Commissioner is supported by substantial evidence, as urged by respondents, or whether such finding is without such support, as urged by libelants and as found by the District Court.

██ We observe in the beginning that we think it unnecessary to analyze or discuss numerous cases called to our attention insofar as they relate to the function of a court in a proceeding of the instant character. As stated by this court in Eschbach v. Contractors, Pacific Naval Air Bases, 7 Cir., 181 F.2d 860, 865, "And its function [the District Court] was to examine that evidence [that taken before the Deputy Commissioner] to see if the inferences and findings of the Deputy Commissioner were supported by substantial evidence." And no citation of authority is required in support of the principle that upon judicial review a Compensation Order is conclusive if substantially supported and that the court in determining if the order is thus supported is not permitted to weigh or evaluate conflicting evidence.

██ The Act itself does not define the word "dependent." A reading of the numerous cases called to our attention, however, demonstrates that the word is given its ordinary meaning and generally used in the same sense and with the same meaning as in various Workmen's Compensation Acts, and we think it sufficient to cite and quote only from a few of such cases. In Obear-Nester Glass Co. v. Industrial Commission, 398 Ill. 342, 346, 75 N.E.2d 892, 894, the court stated: "The decisive test in determining dependency, we have frequently announced, is whether the contributions were relied upon by the applicant for his means of living, judging by his position in life, and whether he was, to a sub-.

stantial degree, supported by the employee at the time of the latter's death." The same court, in Wasson Coal Co. v. Industrial Commission, 312 Ill. 241, 244, 143 N.E. 584, 585, stated that there must be evidence that the deceased was actually making some contribution to the support of the claimants at the time of the injury and, "Expectation, however reasonable, of future contributions, such as appeared in this case, does not come within the terms of the statute, and the award was not justified by the evidence." And it has been held that evidence of contributions in the form of gifts is not sufficient to show dependency. In Betor v. National Biscuit Co., 85 Mont. 481, 280 P. 641, 643, the court stated: "It surely needs no argument to support the proposition that a woman living with her husband who is amply able to support, and who does support, her according to her station in life, is not dependent upon a son who occasionally contributes sums of money for her use." In Pieters v. Drake-Williams-Mount Co., 142 Neb. 315, 6 N.W.2d 69, 72, the court stated: "It is not money contributed, but money contributed for the partial support of the claimant that must be the basis of any claim of partial dependency. Dependency in fact is not created by contributions made for purposes other than partial support of the alleged dependent."

The term has been similarly defined by the Federal courts. In London Guarantee & Accident Co. v. Hoage, 64 App.D.C. 105, 75 F.2d 236, 237, the court stated: "The test is rather whether the son's contribution was necessary and relied on by the father for his support or to enable him to discharge the legal duty of support to those dependent on him." In Standard Dredging Corporation v. Henderson, 5 Cir., 150 F.2d 78, 81, the court adopts a summary of cited authorities defining the term as follows: " 'The test of dependency as laid down by the decided cases is reliance by the dependent on the employee's contributions for the means of living for himself or family, having regard to the dependent's class and position in life, and actual application of the contributions for that purpose'."

Thus, in light of the tests to be applied, we turn to the evidence taken before the

Deputy Commissioner. We have read it with care and are convinced that the District Court correctly found contrary to the Deputy Commissioner on the issue of dependency. The evidence clearly establishes not only that the claimant did not rely upon the deceased for support but that there was no occasion for her to do so. The deceased had been away from home for eight or nine years. In October, 1943, claimant and her husband purchased a home in Rapid City, South Dakota, for which they paid $3,600.-00. The title to the home was taken in the name of the claimant and her husband. At the time of the purchase of this home, deceased gave his father $400.00 to apply on the purchase price. Whether this was a gift or loan the record does not disclose. Prior to the purchase of this home, claimant and her family had lived on a farm at Box Elder, South Dakota. The farm was owned and operated by the family, and consisted of about 1,600 acres. After moving to Rapid City, the claimant's husband and two of the sons, one of whom was married, operated the farm and divided the income. At the time the home was purchased the deceased gave his parents some money to buy some electrical things, such as a mixer and waffle iron.

The finding of the Deputy Commissioner that the deceased contributed in the neighborhood of $300.00 during the year preceding his death appears to be based upon the testimony of the claimant that the deceased sent her $150.00 to apply on the purchase of a refrigerator which was ordered but was not received or paid for until more than a year and one-half or two years after his death. It also appears that the deceased won $75.00 in gambling, which he sent to the claimant. There is also testimony by the claimant that the deceased on some occasions sent her $5.00 or $10.00, but neither the total amount nor the times when such monies were received is discernible from her testimony. We think there is no basis for the contention that the $150.00 which the deceased sent to claimant to apply on the purchase of a refrigerator but which was not spent for that purpose until long after his death, or the sending of the $75.00 under the circumstances stated, or the occasional sending of $5.00 or $10.00, proves or tends to prove that the claimant looked to or relied upon the deceased for her support, either in whole or in part, and we think it likewise fails to show that the deceased recognized any such obligation on his part. The sending of such money by the deceased represented nothing more than gifts and evidenced an affection rather than the recognition of a duty or obligation to contribute to his mother's support.

Moreover, the claimant, on January 8, 1947 (about two weeks after decedent's death) made a statement in her own home and in her own handwriting, referred to as Exhibit 1, in which she stated, among other things, "No member of our family was dependent on Melvin for a living. He did from time to time give me some money because of the rather heavy medical expense I have had in treating arthritis. * * * Melvin did not give me money with any regularity. Three or four times a year he might send me money in amounts ranging from $10 to $100. He was just a good, kind boy and always did nice things for me and worried about me. I used some of the money to pay doctor bills, some to buy electrical apparatus for our house which we moved into two years ago in September 1946, and some to buy clothes. Melvin never stipulated what I should do with the money and all amounts given me I considered gifts to do with as I pleased." Respondents contend that this apparently frank statement should not be considered for the reason that the sentence concerning dependency is a conclusion and contrary to the evidence heard at the hearing and that a consideration of the statement amounts to a weighing of the testimony. We do not agree. The statement, especially taken as a whole, is factual and, in addition, it is not in conflict with the evidence taken at the hearing but is corroborative thereof. At the hearing, the following occurred in question and answer form:

"Q. Mrs. Brehm, in your statement marked Exhibit 1, you said it was not necessary for Melvin to contribute to your living expense. A. He didn't. No.

"Q. The income from the farm is enough for you and your husband to take care of yourselves? A. It has been."

The husband of the claimant testified that he had always supported his wife, that he still did and that he had provided all the necessities for her.

■ Other minor circumstances shown at the hearing and relied upon by respondents need not be set forth because they carry no weight in support of the finding made by the Deputy Commissioner. Applying the definition ordinarily and usually given to the term "dependent," we agree with the District Court that there was no substantial evidence to support the finding of dependency.

The order appealed from is, therefore, Affirmed.