## MATTISON v. BROWN et al.
### No. 10545.

United States Court of Appeals
Seventh Circuit.

June 5, 1952.

Rehearing Denied and Opinion Modified
July 18, 1952.

Bernard G. Sang, Vincent J. Cafney, Chicago, Ill., Max Shapiro, Minneapolis, Minn. (Blum & Sang, Chicago, Ill., of counsel), for appellant.

Otto Kerner, Jr., U. S. Atty., John P. Lulinski, Asst. U. S. Atty., Melvin L. Klafter, Asst. U. S. Atty., David Jacker, Charles M. Rush, John M. O'Connor, Jr., Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and DUFFY and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiff's suit under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., instituted under Section 21(b) of that Act, 33 U.S.C.A. § 921(b), to set aside an order of Leonard C. Brown, Deputy Commissioner of the Bureau of Employees' Compensation rejecting plaintiff's claim for disability compensation under the Act, having resulted in a judgment in the District Court dismissing the suit, plaintiff appeals. The employer, Metcalfe-Hamilton Kansas City Bridge Company and its insurer, The Travelers Insurance Company, were also made defendants.

The parties agree that our review is limited to a determination of whether the findings of the Deputy Commissioner are supported by substantial evidence on the record considered as a whole. O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 508, 71 S.Ct. 470, 95 L.Ed. 483; Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; Folds v. Federal Trade Commission, 7 Cir., 187 F.2d 658, 660 and Consolidated Royal Chemical Corp. v. Federal Trade Commission, 7 Cir., 191 F.2d 896, 900. We held, in Pollock-Stockton Shipbuilding Co. v. Brown, 7 Cir., 185 F.2d 37, 39, that such is the scope of review of a Deputy Commissioner's order under the Longshoremen's and Harbor Workers' Compensation Act. See also Wheeling Corrugating Co. v. McManigal, 4 Cir., 41

F.2d 593; Southern Stevedoring Co. v. Voris, 5 Cir., 190 F.2d 275. The provisions of the Administrative Procedure Act govern. O'Leary v. Brown-Pacific-Maxon, 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483. The only question presented, therefore, is whether the evidence before the Deputy Commissioner was of such substantial character, considered on the record as a whole, as to justify the finding and order.

There is little dispute in the evidence, which consisted of the testimony of plaintiff and one of his fellow-workmen and the reports of various physicians. According to plaintiff's undisputed testimony he went to work in Iceland for the Bridge Company engaged in construction work for the United States Government on that island, in July 1947, after a medical examination. He was then in good health except for a slight deafness in one ear. He continued in the employment until April 9, 1948, when, after increasing physical discomfort for several weeks, he became ill and was taken to the hospital. He was an electrician and worked in a small battery room, which was a part of a hangar, a large building. The latter was heated with stoves,—double drum oil burners, the exhaust pipes of which extended some four or five feet above the drums, so that the unburned fumes escaped into the building. The evidence, in the final analysis, is undisputed that there was no ventilation in the roof of the hangar and no outlet to conduct the fumes outside as they escaped from the stoves. The heating season started in October and continued until after plaintiff left the employment; during the cold weather all outside hangar doors were kept closed.

The battery room was enclosed with wooden planks. In his work within it, plaintiff was subjected to the fumes of sulphuric acid which could escape only through the door leading to the hangar. There was no mechanical equipment serving to draw the fumes away. Only plaintiff usually and regularly worked in the battery room.

About 2½ months prior to his injury plaintiff began to have dizzy spells. He experienced loss of sleep and of appetite and, finally, after this condition had persisted for sometime, he reported to Dr. Shuman, attending physician. On the 19th of April he arose about 9:30 A. M., expecting to report to the hospital and there see the doctor. He became ill, fainted and remained unconscious until 12 o'clock when, upon regaining consciousness, he found himself lying on the floor with "quite a bit of blood" about him. He was then taken to the hospital where he stayed until he left Iceland on April 24 for his home in America.

Plaintiff was corroborated in certain particulars by William Love, who likewise worked in the hangar, and who testified that there was no ventilation in the roof of the building, no opening of any sort and no chimneys except those extending above the oil drums.

After returning home plaintiff was under the care of physicians for several months, gradually improved and had made a practically complete recovery by the fall of 1948.

Dr. Engstrand reported that he first saw plaintiff on April 29, 1948, directly after his return from Iceland; that after "complete examination no organic lesions" were found; that the patient's "blood examination" was "relatively within normal limits," showing "some evidence of lowered resistance"; that, assuming that he "had worked in an area where sulphuric acid fumes were present, this case was undoubtedly the result of toxic poisoning producing dizziness and fainting" and that x-rays showed a fracture of the left jaw. The doctor reported as of June 14, 1948, that, after "considerable laboratory examination, no unusual pathology could be found" which was "not explained on a toxic basis," resulting from the patient's employment requiring him "to work where oil fumes and other fumes were present in large amounts"; that, under tonic, anti-acid and mineral oil treatment, he had "improved rapidly" but that "the pain in his jaw persisted"; that x-ray pictures of both jaws taken May 20, 1948 showed "that the left side was lapping near the head of the left maxilla," but that "it was thought just as well to leave the fracture in the position in which it was"; that on June 8, the

jaw had improved and the patient was feeling "very good." The same physician reported, under date of October 29, 1948, that under medication and treatment recommended, Mattison had "gradually improved"; that complete recovery had not yet been achieved, as there was still "tenderness over the fractured jaw," and that the patient should make complete recovery within "a few months."

Under date of September 8, 1948, Dr. Kirkhof reported that, with the exception of tenderness on the left side of the face, including "pressure over the left mastoid process" producing pain, the head, heart, blood count and pressure, heart tones, chest, abdomen, rectum, trunk, extremities, urinalysis and hemoglobin of the patient were all negative, i. e. without positive indication of pathological or other abnormal characteristics; that, though the patient could have received a fracture in April, he found no present evidence of such injury; that he could find "no evidence of any disease," except the possibility of some previous "coronary disease"; and that it is "entirely possible" that the man had "sufficient carbon monoxide" within him to cause him to "become faint and fall," but that he could not say whether claimant "fell by reason of any illness of his own or by reason of the situation where he worked."

The report of Dr. Kearing, who attended plaintiff in Iceland after he was taken to the hospital, reported in August, 1948, that on April 3, 1948, he found plaintiff afflicted with "cerebral and secondary anemia"; that on April 19, Mattison was returned to the hospital to receive "treatment for facial injuries which he sustained from a fall after fainting." This physician did not offer any opinion as to what had caused plaintiff's

condition or how long it had existed, or would continue, except to say that for 2½ months the patient "has had a poor appetite" and has not been "able to sleep" and has had "dizzy spells." Obviously this report does not controvert the testimony of plaintiff or that of the other physicians.

The foregoing includes in substance all the evidence, both oral and documentary, submitted to the acting commissioner. We have recounted it somewhat in detail, for it is our duty to determine whether it furnishes any rational basis for the finding that "the evidence herein does not establish that claimant's illness resulted from said conditions, or arose out of his employment." [1]

The record is devoid of the slightest bit of evidence that the hangar had "ventilation at the top"; indeed the positive, undisputed testimony is quite the contrary. It is undisputed that plaintiff and other employees were subjected to sulphuric acid fumes in the battery room, without ventilation other than that of an open door into the hangar, unaided by drafts, fans or other means of ventilation, and to gas and oil fumes found elsewhere in the hangar; that he became ill, fainted, fell, was unconscious for two or three hours, and was sent back to the United States; that no physician in Iceland even attempted to determine the cause of his illness; that the doctors at home found no evidence of permanent pathology and no explanation for his illness other than his working conditions; that when he was removed from such environment and given proper tonic and stomach medication, he improved and was soon on the road to complete recovery. There is no evidence whatever to controvert any of these facts. It must be concluded, therefore, that, in view of the

1. The pertinent part of the finding is: "On said date, while ill in quarters, he fainted and fell on the floor, suffering a fracture of the left lower jaw, rupture of the left ear drum and bruises about the face. * * * he asserts his illness resulted from inhalation of fumes of sulphuric acid in the battery charging room, and fumes from improvised oil heaters in the hangar where he worked, the stovepipes of which extended only eight feet high while the hangar was 100x200 feet and the roof about 40 feet high with ventilation at the top. The battery charging room was about 10x12 feet with an 8-foot ceiling, with ventilation through an open doorway; * * * he spent two or three hours a day out in the hangar; * * * the evidence herein does not establish that claimant's illness resulted from said conditions, or arose out of his employment."

absence of any pathology at the time he began work, of its presence after some months of work, his continued and constant subjection to carbon monoxide and sulphuric acid fumes, his improvement and recovery after ceasing work and the other facts and circumstances in the record, his illness could have been caused only by his employment and arose out of the same. There is absolutely no evidence to the contrary.

In view of our conclusion, the trial court, on the record submitted, should not have entered judgment for defendant. The judgment is reversed with directions to vacate and set aside the findings and order entered by the Deputy Commissioner and to remand the cause to the latter with instructions to proceed in a manner not inconsistent with this opinion and in accord with law. The costs of this appeal will be assessed against the defendant-respondents, The Metcalfe-Hamilton Kansas City Bridge Company, a corporation, and The Travelers Insurance Company.