**HOLLAND v. ALTMEYER et al., Social Security Board.**

**Civil Action No. 1033.**

District Court, D. Minnesota, Fourth Division.

May 31, 1945.

Charles S. Kidder (of Orr, Stark & Kidder), of St. Paul, Minn., for petitioner.

Victor E. Anderson, U. S. Atty., and Linus J. Hammond, Asst. U. S. Atty., both of St. Paul, Minn., for defendants.

NORDBYE, District Judge.

The above cause came before the Court on defendants' motion for a summary judgment on the grounds that there is no genuine issue as to any material fact and that defendants are entitled to judgment as a matter of law and for judgment in accordance with Section 405(g), Title 42 U.S. C.A., affirming the decision of the Social Security Board, and as to which the petitioner herein has proceeded to obtain a review.

The facts appearing in the record and which seem relevant are as follows: When the petitioner herein resigned in April, 1942, from his position as District Agent for the State Farm Mutual Insurance Company at Bloomington, Illinois (hereinafter called the Bloomington Company), he applied for, and was granted, the "Primary Insurance Benefits" contemplated by Section 202(a) of the Social Security Act, 42 U.S.C.A. § 402(a). He also applied for, and was granted, on behalf of his two minor daughters, the "Child's Insurance Benefits" contemplated by Section 202(c) of the Act, 42 U.S.C.A. § 402(c). At or about the time the petitioner resigned as District Agent for the Bloomington Company, he purchased a general agency writing insurance for the Farmers Mutual Automobile Insurance Company of Madison, Wisconsin (hereinafter called the Madison Company). This agency was sold to plaintiff with the consent of the Madison Company, and in appointing the petitioner District Supervisor for that company, a letter of appointment was issued which sets forth in some detail the duties of the District Supervisor. This letter was in the following form:

"Farmers' Mutual Automobile
Insurance Co.
"312 Wisconsin Ave.
"Madison, Wisconsin.
"April 21, 1942.

"Mr. J. H. Holland,
"Pine City, Minnesota.

"Dear Mr. Holland:

"Your license authorizing you to represent our Company in the State of Minnesota has already been sent to you.

"This letter will serve to notify you officially of your appointment as District Supervisor effective April 1, 1942.

"Your principal duties are as generally outlined on page 3 of your rule book and are as follows: It will be your duty to appoint (subject to Home Office review and approval), train, supervise, and service all agents in the district assigned to you and to do any and all things necessary to maintain and increase the volume of business in your territory.

"It will also be your duty to perform for any and all of our insureds the usual services on claims—for example: to provide loss reports; in the event of a loss to put our insured in touch with our nearest claim representative; and to see that all of your agents are properly servicing the losses of our insureds in their respective territories; and to perform such claim duties as they may be called upon to perform from time to time by the Home Office.

"It will also be your duty to educate agents in the proper selection·of risks and to handle an occasional inspection of individual risks as may be requested by the Underwriting Department.

"It will also be your duty to assist the Accounting Department whenever assistance is requested by them to keep agents' accounts up to date, and further to inform the Accounting Department when in your opinion there are circumstances surrounding an agent's habits, etc., which may eventually lead to difficulty for the Company in collecting accounts current or other funds due the Company.

"Periodically new rules, regulations, or commission scale adjustments will necessarily be formulated by the Company, and it will be your duty to abide by them and to instruct your agents regarding any new rules, regulations or commission scale adjustments as they are issued.

"Your compensation for all services rendered for the Company will be an overwriting commission of 6% on all premiums developed and produced by the agents in your district. This includes both new and renewal business. You will undoubtedly produce business for our Company through your own agency. Your commission on this personally-produced business is the same as paid to local agents as outlined on page 7 of the rule book as follows:

"First six months—20% of gross premiums

"Second six months—10% plus reinstatement fee, if any

"Thereafter—10% plus reinstatement fee, if any.

"In addition you will receive your regular overwriting commission of 6% on business which you develop yourself.

"The following territory is being assigned to you and will comprise your district:
"Chisago County
"Isanti County
"Mille Lacs County
"Kanabec County
"Pine County
"Morrison County
"Crow Wing County
"Aitkin County
"Carlton County

"We sincerely hope that your new duties as outlined herein will be to our mutual benefit.
"Your very truly,
"[Signed]   Karl Brecht
"Karl Brecht
"Agency Supervisor."

After entering upon his appointment as District Supervisor for the Madison Company, and during the month of June, 1942, by reason of his employment by that company, the petitioner received more than $15 in income for that month. Because of this income, the Bureau of Survivors and Old Age Benefits declared that Holland and his children were incligible for the primary and child benefits for that or any other month in which income in a like amount was received. Because of the Bureau's ruling, he sought, and was granted, a hearing before the Referee. The Bureau's decision was sustained. The matter was then taken to the Appeals Council of the Social Security Board, which adopted and affirmed the Referee's decision. The matter

has been brought to this Court by virtue of the section (42 U.S.C.A. § 405(g), which vests review jurisdiction in this Court in the following terms and to the following extent:

"Any individual, after any final decision of the Board made after a hearing to which he was a party, * * * may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Board may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides. * *· * The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Board, with or without remanding the cause for a rehearing. The findings of the Board as to any fact, if supported by substantial evidence, shall be conclusive, * * *. The court * * * may, at any time, on good cause shown, order additional evidence to be taken before the board, * * *."

Petitioner now contends that this jurisdiction should be exercised to rectify the errors which he claims were made by the Board when it held that he was an employee of the Madison Company and therefore not entitled to the benefits which his employment with the Bloomington Company occasioned.

The Referee's decision, being the only written one and having been adopted by the Appeals Council, apparently expresses the decision of the Board. The pertinent portions of the Referee's decision will be found in the following summarization:

"* * * The right to discharge was quite patently possessed by the company. There are also a number of signs of control by the company as to how the work shall be done. It must be done in accordance with the rules and regulations of the company. On behalf of the company the wage earner was to exercise supervision and give training to all of the subordinate agents in his territory. He was to assist the accounting department in keeping agents' accounts up to date. In other words, he was to receive specific instructions as to particular accounts that came within the scope of his work. The wage earner was to perform for the insureds numerous services on claims, such as providing loss reports, putting the insured in touch with the nearest claim representative, and following up the subordinate agents to see that they were properly servicing the losses of the insureds. Further, he was to perform such claim duties as he might be called upon to perform from time to time by the home office. This latter is a very definite instance of a reservation by the company of the right to control and direct the individual performing services.

"Stationery of the company was provided to the wage earner and he merely added his own name as district supervisor to this letterhead. On his business card he described himself as district supervisor of the company. While he was probably known to the general public as writing a considerable variety of insurance lines, he did not have an office or did not put out literature holding himself out as an independent broker in insurance. It would be quite possible for him to represent certain companies in such a manner as to be an independent contractor with respect to those companies and, yet, to be with respect to another company an employee. The very title of his position, 'district supervisor,' is one more likely to be used to describe an official of the company having with respect to it the status of an employee. That he was paid by commission is not persuasive on one side or the other. * * *."

The Referee found that these facts sufficiently established that "certain extent" of control and that "certain number" of the usually recognized earmarks of an employer and employee relationship to justify a conclusion that the petitioner herein was an employee of the Madison Company. The bases for the facts indicated by the Referee are found in the written appointment of the petitioner, the rules and regulations of the company, and from the undisputed testimony.

██ At the outset, it seems clear that this Court cannot substitute its inferences from the admitted facts in place of those indicated by the Referee. The judgment of the administrative body must prevail if the "judgment was based upon conclusions reasonably reached upon due consideration of all relevant issues presented after parties in interest had been given a fair hearing or a fair opportunity to be heard upon the facts and the applicable law. Gray v. Powell, 314 U.S. 402, 62 S.Ct. 326, 86 L.Ed. 301." Walker v. Altmeyer, 2 Cir., 137 F.2d 531, 533. Granted that the element of control

as reflected in this record over the details and means by which the supervisory duties of the District Supervisor should be performed may seem to fall short of meeting the standards which many cases require in spelling out the relationship of employer and employee, the Court should not be unmindful of the responsibility which Congress has vested in this administrative body under the Social Security Act. The language of the Supreme Court in National Labor Relations Board v. Hearst, 322 U.S. 111, 130, 64 S.Ct. 851, 860, 88 L.Ed. 1170, which states, "That task has been assigned primarily to the agency created by Congress to administer the Act," is applicable herein. What this Court may deduce from the admitted facts might seem more sound and plausible than the findings of the Referee in light of the generally accepted definition of employer and employee and in light of the regulations of the Social Security Board. But, obviously, if each court were vested with authority to control the interpretation of the various relationships which come before the Social Security Board, there would probably be an utter lack of uniformity in the administration of the Act. Situations similar to the instant one have, or undoubtedly will, arise in various parts of the country and uniformity of administration of the Act is highly desirable. It must be remembered that the Board is confronted not only with the responsibility of determining when a recipient of social security benefits has lost such benefit payments by reason of employment within the meaning of the Act, but also the primary question as to when the wage earner is entitled to the benefits of the Act.

Moreover, it would seem that the Board's conclusions that the Madison Company had control over the details and methods of the work to be performed by the petitioner, as well as the results to be achieved, has substantial support in the evidence. Holland's appointment as District Supervisor should be distinguished from the appointment of a mere solicitor of insurance. The interest of the employer with reference to an insurance agent is primarily concerned with the results which he achieves; that is, if an agent produces a certain volume of acceptable insurance risks, there is no real control of the details or methods by which the results are obtained. Holland, however, was vested with numerous duties of a supervisory nature, and as to which the employer outlined in some detail in the letter of appointment. The performance of these duties necessarily required a certain close contact with the Home Office as to the method of performing them. It is recognized, of course, that Holland did not have any particular tenure of appointment; the right of discharge rested with the Madison Company. The agents to be appointed by Holland required the approval of the Home Office. The training, supervising, and servicing of agents would undoubtedly require literature from the Home Office, advertising matter, rule books, and other information which would enable the District Supervisor to acquaint the insurance solicitor with the performance of his duties for this particular company. Holland was required to perform such claim duties from time to time as the Home Office called upon him to perform. Such duties may well require advice, direction, and supervision from the Home Office. Indeed, it is difficult to understand how the District Supervisor could handle occasional inspection of individual risks as might be required by the underwriting department without the Home Office exercising control of the details and methods of such inspection. Then, again, it will be observed that, when the accounting department requested the District Supervisor's services in assisting it to keep the agents' accounts up to date, Holland was required to render such assistance. Such services presumably would be rendered under the supervision, direction and control of the accounting department. It will be noted that Holland was required to inform the accounting department of any circumstances surrounding the agents' habits, etc., which might lead to difficulty in the handling of funds due the company. When one considers the numerous duties set forth in the letter of appointment, due consideration must be given to the probable manner in which such duties should and would be performed and the probable direction and control of the employer over the manner and circumstances of the performance of such duties. The record does not supplement by actual experience the exact manner in which many of the duties outlined would be performed. The employment began as of April 1, 1942, and the hearing before the Commissioner was had in October, 1942. In any event, it seems fairly clear from the record and the inferences that

may properly be drawn therefrom that the employer retained sufficient control over the manner of performance of at least a goodly share of the duties assigned to Holland. It is sufficient if it appears that the employer had the right to direct and control the manner in which the services are to be performed, but not only did the employer have the right to direct and control, but it is fairly inferable, and a reasonable implication from the very nature of the duties assigned to Holland, that the employer would necessarily be required to exercise a certain amount of control and direction of the manner and method by which the duties were to be carried out. This Court, of course, lacks the power to evaluate the evidence. Social Security Board v. Warren; 8 Cir., 142 F.2d 974. The Referee and the Appeals Council have found that the admitted facts fairly reflect the relationship of employer and employee within the meaning of the regulations and in light of the purposes of the Act. The legislation is remedial. It deals with practically every phase of the relationship of wage earner and employer. Strict technical interpretation of the factual situation, according to narrow common law standards, is not mandatory on the Board. In administering this type of legislation, the practical problems confronting the Board are well recognized. National Labor Relations Board v. Hearst, supra. It would seem, therefore, that a determination of the Referee and the Appeals Council has "warrant in the record" and a "reasonable basis in law." National Labor Relations Board v. Hearst, supra.

Petitioner contends that the Referee failed to make a finding that he purchased the agency for a specified price, and that he had the right to sell the agency to someone acceptable to the Madison Company. That there was evidence to this effect is conceded, but while no formal finding of that fact was made by the Referee, he did indicate in his decision that he had given consideration to that contention. In referring to this evidence in his decision, the Referee stated:

"* * * He (Holland) said the only restriction was that in case he resigned he must sell his business to an individual approved by the company. He believed he had a vested interest in the renewal commissions and that on terminating his connection with the company, he could sell these commissions to a successor approved by the company."

Regardless of the informal manner in which the petitioner's contention was recited by the Referee, there is no reason to assume that the evidence bearing on the vested interest in the agency was not given due consideration by the Referee as one of the "numerous factors" which he considered in reaching his decision.

There remains only one further matter to be commented upon. Petitioner refers to the statement made at the hearing when the Referee stated:

"If you can think of anything else which distinguishes your services with the Company at present from your services for the State Farm Mutual, I would like for you to say so. I think you will appreciate why this was a problem to the Bureau of Old Age and Survivors Insurance. Here they granted you benefits on the basis of a connection as an agent with the State Farm Mutual and then while that award was pending you raised the question of whether or not your services for these other companies would be services in employment. To hold that they were right in granting you benefits you must distinguish between the two types of services." (Record, pp. 54, 55.)

The contention is made that the Referee assumed to require the petitioner to prove that he was an employee of the Bloomington Company, which, of course, was a conceded fact. But, obviously, this burden was not placed on Holland by the Referee. This question evidently was prompted by a desire on the part of the Referee to learn from the petitioner if he, the petitioner, could distinguish between the two tenures of employment, first, with the Bloomington Company, when the relationship of employer and employee was the basis for the security benefits, and the present employment with the Madison Company, which was the employment in issue. As to each company, he had been a District Agent or Supervisor. The companies were both farm mutuals. The record indicates that the Referee did consider the distinction between the two employments as indicated by the petitioner in his testimony, and such consideration appears from the summarization which is to be found in the following recitals made by the Referee:

"He drew a distinction between his services for the group of State Farm Mutual

companies, with which he had been connected prior to the time when he had applied for benefits, and various other companies since that time. He stated that with the State Farm Mutual companies he had no continuing interest in the business, in other words, no equity which he could sell when his services terminated, that he was expected to give full time to the State Farm Mutual work and that he could not write other automobile insurance. He appeared to believe that the form of contract which he had with the State Farm Mutuals was a more 'binding' one than with the other companies because it was in legal form and had many details." (Record, pp. 9, 10.)

In this connection, some question has arisen as to whether the written contract between the petitioner and the Bloomington Company was in evidence. When reference was made to it in the testimony, the petitioner indicated that the Referee probably had a copy of the contract, but as to such statement the Referee made no response. The petitioner now contends that he assumed that the contract was before the Referee and therefore he did not formally offer it in evidence. He contends that an inspection of this contract would clearly indicate the difference in the control of the District Agent as evidenced by the agreement with the Bloomington Company, as compared with the arrangement between the Madison Company and himself. However, it is elementary that this Court is limited to the record before the Referee and cannot consider new and additional evidence. Furthermore, no showing is now made which would indicate that the matter should now be remanded to the Board for the purpose of receiving additional evidence. It fairly appears that the petitioner called to the Referee's attention substantially all the factual data which related to the difference between the contracts of employment and which would have any material bearing upon the issues. The summarization made by the Referee fairly points out the principal differences between the two contracts.

It follows, therefore, that defendants' motion for judgment as prayed for must be, and is, granted and that the decision of the Referee and the Appeals Council must be in all things affirmed. It is so ordered. An exception is allowed to the petitioner.